IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| CAST GROUP OF COMPANIES, INC., | OPINION and ORDER |
| Plaintiff, | |
| | 08-cv-753-bbc |
| v. | |
| ELECTRONIC THEATRE CONTROLS, INC., | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     For several years plaintiff CAST Group of Companies, Inc. and defendant Electronic Theatre Controls, Inc. had an agreement under which defendant distributed software for plaintiff. The crux of the dispute in this case revolves around a device called a dongle, which controls access to plaintiff's software. Plaintiff asserts claims for copyright infringement, breach of contract, conversion and negligent and intentional misrepresentation, alleging that defendant misused the dongles by distributing them and the information contained in them without authorization from plaintiff. Jurisdiction is present under 28 U.S.C. §§ 1332 and 1367.

     Defendant has filed a motion for partial summary judgment in which it contends that plaintiff's claims for misrepresentation are barred by the economic loss doctrine and that its

1

claim for conversion is preempted by the Copyright Act. In addition, defendant contends that plaintiff has no evidence connecting defendant to the misuse of 40 of the dongles at issue and that any claims arising out of events occurring before December 31, 2004 are barred by a release in the parties' 2005 contract. In response to defendant's motion, plaintiff has withdrawn its claim for negligent misrepresentation and its claims related to 24 out of the 40 dongles. With respect to its claim for intentional misrepresentation, plaintiff has abandoned the claim it raised in its complaint related to allegedly false information about defendant's databases and distribution of the dongles. Plaintiff replaces that claim with new allegations that defendant falsely reported its sales, which induced plaintiff to enter a new agreement with defendant in 2005.

I conclude that defendant's motion for partial summary judgment must be denied in part. Federal copyright law does not preempt plaintiff's conversion claim to the extent that the claim is focused on alleged unlawful use of the dongles themselves rather than the information on the dongles. With respect to the claims relating the remaining 16 of the 40 dongles, plaintiff has adduced circumstantial evidence in support of its position that defendant is responsible for their alleged misuse.

The motion will be granted with respect to plaintiff's intentional misrepresentation claim and its claims arising out of events occurring before December 31, 2004. Plaintiff's new misrepresentation claim must be dismissed because plaintiff did not give defendant

2

notice of it until summary judgment, when it was too late to raise new claims. I agree with defendant that plaintiff has released any claims against defendant for claims arising out of events occurring before December 31, 2004 that are related to the parties' contract. This means that defendant's motion for summary judgment must be granted with respect to 12 of the remaining 16 dongles because plaintiff has failed to adduce evidence that those dongles were misused after December 31, 2004.

From the parties' proposed findings of fact, I find the following facts to be undisputed.

UNDISPUTED FACTS

Plaintiff CAST Group of Companies, Inc. is a Canadian corporation with its principal place of business in Ontario. Plaintiff makes *wysiwyg* ("what you see is what you get") software, which is used to design lighting schemes in theatrical, entertainment and other commercial applications. Defendant Electronic Theatre Controls, Inc.'s state of incorporation and principal place of business is Wisconsin.

Plaintiff's *wysiwyg* software is sold in different levels of increasing functionality, including *wysiwyg* Report, *wysiwyg* Design and *wysiwyg* Perform Unlimited. To move to a level of *wysiwyg* software with greater functionality, an end user must purchase an upgrade. Plaintiff has released four versions of *wysiwyg*. Plaintiff tracks the time for which a *wysiwyg*

3

end user is entitled to receive new releases through a concept called stepping. When a user registers *wysiwyg*, he or she receives 12 months or 12 steppings as part of the initial purchase price. After the 12 months expire, that user must decide whether to purchase a subscription renewal and remain on the most current release of *wysiwyg*.

Plaintiff's software is controlled through the use of a portable device called a dongle, which allows the user to register the software, upgrade the codes or renew a subscription. Each dongle comes with a serial code that lasts 15 days, after which the user must register the serial code if he wants to continue using the software.

Plaintiff and defendant entered into a series of agreements regarding the distribution of plaintiff's software in 2000, 2005 and 2007. Under the 2000 agreement, defendant distributed two types of plaintiff's software: (1) a separate, stand-alone software product referred to as the "Box Product" and (2) a product that was incorporated into defendant's lighting console, referred to as the "Emphasis Product."

Under the 2005 agreement, effective December 31, 2004, defendant agreed it would no longer sell the Box Product; plaintiff acknowledged that it owed defendant $1.2 million; and plaintiff gave defendant permission to "sell WYSIWYG into projects or WYSIWYG CE as bundled with consoles, but not as a stand alone product." The 2005 agreement includes the following provisions:

> Subject to any claim which CAST may have pursuant to the terms of this Agreement,

4

> CAST hereby finally and completely releases and forever discharges ETC, its officers, directors, agents, servants and employees and each of them individually, and its successors and assigns (the "ETC Releasees") from any and all actions, causes of action, suits, debts, accounts, covenants, demands, proceedings and claims and costs, for injury, loss or damage of any kind whatsoever which CAST has had or now has against the ETC Releasees arising out of or in any way related to the 2000 Agreement.
>
> * * *
>
> After December 31, 2004, neither party will make any payments whatsoever to the other party except (i) as expressly set forth in this Agreement or (ii) payments that (a) have accrued under the 2000 Agreement and (b) pertain to the period prior to December 31, 2004.

Under the 2007 agreement, defendant continued to sell plaintiff's "Emphasis Product."

Defendant tracked dongle activity in its Registration Activation Database, which includes three tables: the Receiving table, the Registration table, and the Activation table. The database is intended to track dongles across time, showing: (a) when a dongle was received by defendant and the *wysiwyg* product level, in the Receiving table; (b) when a dongle is registered by an end user, along with information about the user in the Registration table; and (c) when a dongle is renewed on a current version of *wysiwyg* or when a dongle is upgraded to a new *wysiwyg* product level, in the Activation table. Plaintiff tracked dongle activity in a database called Excart, using the information supplied by defendant.

After 2005, plaintiff sometimes had no record in its Excart database of a dongle for which an end user had contacted plaintiff to renew a software subscription. This required

plaintiff to make a manual entry and collect information from the user to verify the product, serial code and membership expiration date.

Defendant's databases shows that it received or activated the following dongles (identified by their serial numbers): 8461, 8458, 8198, 8131, 6910, 5678, 5644, 5616, 5524, 5369, 5327, 5323, 4537, 4791, 4736, 4329, 4219, 4006, 3950, 3877, 1661, 1559, 4587, 4539, 4665, 4632, 4397, 4205, 5519, 4191, 4149, 2586, 1768, 764, 899, 5153, 1595, 5178, 5679 and 7987. Dongles 1595, 5178, 5679 and 7987 were registered, upgraded or renewed after December 31, 2004.

During the time relevant to this lawsuit, plaintiff was upgrading and activating dongles. Upgrades made by plaintiff's employees were not recorded automatically in a database, but had to be manually reported and entered. Two employees capable of upgrading dongles have left plaintiff's employment.

Plaintiff registered a copyright for its *wysiwyg* software in 2008.

OPINION

A. Fraudulent Inducement/Misrepresentation

Plaintiff's misrepresentation claim has been a moving target. In its complaint, plaintiff asserted claims for both negligent and intentional misrepresentation on the following grounds:

6

>a. In connection with the 2005 Agreement, early in 2005, ETC provided a database of end users as of December 31, 2004 that was incomplete and inaccurate;
>
>b. In connection with the 2007 Agreement, in approximately August of 2007, ETC provided a database of end users as of August 3, 2007 that was incomplete and inaccurate; and
>
>c. ETC's periodic reports of sales and distribution of CAST software were incomplete and inaccurate.

In its opening brief, defendant argues that plaintiff's misrepresentation claim is barred by the economic loss doctrine because the alleged misrepresentations are interwoven with the contracts between the parties. Dft.'s Br. at 13, dkt. #27 (citing Digicorp, Inc. v. Ameritech Corp., 2003 WI 54, 262 Wis. 2d. 32, 662 N.W.2d 653, and Superl Sequoia Ltd. v. The C.W. Carlson Co., 535 F. Supp. 2d 931 (W.D. Wis. 2008)). (The parties agree that Wisconsin law applies to their state law disputes so I need not undertake a choice of law analysis. FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 283 (7th Cir. 2002); State Farm Mutual Automobile Insurance Co. v. Gillette, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662.)) In its opposition brief, plaintiff does not address defendant's argument or otherwise discuss the allegations regarding misrepresentation that it made in its complaint. Instead, it takes a completely new tack, arguing that defendant fraudulently induced plaintiff to enter the 2005 agreement by "fail[ing] to disclose large amounts of so-called 'zero dollar sales,' essentially a large give-away of [plaintiff's] *wysiwyg* software." In a footnote, plaintiff acknowledges that its complaint does not include this allegation, but it says that it "will seek

7

leave to amend its complaint" at some unspecified time in the future. Plt.'s Br., at 5 n.2, dkt. #43.

The Federal Rules of Civil Procedure are not as permissive as plaintiff seems to believe. Under Fed. R. Civ. P. 8 and 9(b), plaintiff was required to give defendant notice of its claim for fraud in the complaint. Plaintiff's use of the words "intentional misrepresentation" in the complaint does not give plaintiff license to advance any set of allegations at summary judgment that might fall under that general concept. Further, it is far too late now for plaintiff to amend its complaint to raise completely new issues. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002) (plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). Although plaintiff says that it did not receive discovery supporting these allegations until June, this would provide justification for such a late amendment only if defendant had violated an order compelling it to comply with a discovery request that plaintiff had made before the deadline for amending the pleadings. Plaintiff has filed no motions to compel in this case. Accordingly, defendant's motion for summary judgment will be granted with respect to plaintiff's claim for intentional misrepresentation.

B. Conversion

Plaintiff's theory of conversion is that defendant distributed dongles without

8

plaintiff's authorization. The question regarding plaintiff's claim for conversion is whether it is preempted by the Copyright Act, 17 U.S.C. § 301(a), which states that federal law "govern[s] exclusively" any "rights that are equivalent to" rights under the Copyright Act involving "works of authorship that are fixed in a tangible medium of expression." Defendant says that § 301(a) bars plaintiff's conversion claim because it is "essentially equivalent to a claim that [defendant] violated [plaintiff's] right to distribute its product." Dft.'s Br., at 23, dkt. #27.

Defendant acknowledges that the law recognizes a distinction between unlawful use of intellectual property and theft of a physical object. See also 1 Melvin Nimmer & David Nimmer Nimmer on Copyright § 1.01[B][1][I] (2009) ("The tort of conversion relates to interference with tangible property rather than intangible property and, hence, should be immune from preemption.") Plaintiff provides the example of a stolen DVD, which could give rise to a claim for conversion for the theft of the DVD itself and to a claim for copyright infringement as well if the information on the DVD is copied. Defendant says that plaintiff's dongles are different because "the only value of the dongle is to allow distribution and access to the software." Dft.'s Reply Br., at 14, dkt. #49. However, that is an allegation of fact rather than a legal contention and defendant adduces no evidence to support it. This claim must proceed to trial.

9

### C. Conduct Occurring Before December 31, 2004

Defendant's third argument involves a question of contract interpretation: whether the 2005 agreement releases defendant from any claims that arose before that agreement took effect on December 31, 2004. Defendant points to the following provision, § 1:

> Subject to any claim which CAST may have pursuant to the terms of this Agreement, CAST hereby finally and completely releases and forever discharges ETC, its officers, directors, agents, servants and employees and each of them individually, and its successors and assigns (the "ETC Releasees") from any and all actions, causes of action, suits, debts, accounts, covenants, demands, proceedings and claims and costs, for injury, loss or damage of any kind whatsoever which CAST has had or now has against the ETC Releasees arising out of or in any way related to the 2000 Agreement.

According to defendant, this provision bars all of plaintiff's claims arising before December 31, 2004 because they are related to the 2000 agreement.

Plaintiff does not challenge the validity of the release, but points to another provision, § 2.1, which allegedly limits the scope of the release:

> After December 31, 2004, neither party will make any payments whatsoever to the other party except (i) as expressly set forth in this Agreement or (ii) payments that (a) have accrued under the 2000 Agreement and (b) pertain to the period prior to December 31, 2004.

According to plaintiff, this provision allows it sue for defendant's alleged failures to report renewals and upgrades of plaintiff's software that occurred before 2005. Specifically, plaintiff says, "Although CAST generally released claims related to the 2000 Agreement, it specifically reserved all claims for amounts that would have been due under the 2000

10

Agreement." Plt.'s Br., at 11, dkt. #43.

Plaintiff's argument is not persuasive. To begin with, plaintiff's interpretation essentially reads the release out of the contract completely. Plaintiff seems to view § 2.1 to mean that it may sue defendant for any breach of contract that would require defendant to pay plaintiff more than it received originally. If that is so, it would be difficult to see what purpose the release would serve. Sonday v. Dave Kohel Agency, Inc., 293 Wis. 2d 458, 470-471, 718 N.W.2d 631, 637 (2006) (court should not read contract to "rende[r] any portion superfluous"). Second, it is not clear whether the phrase "payments that have accrued under the 2000 Agreement" applies to a claim that plaintiff asserted for the first time several years after the 2005 Agreement took effect; it could be read as defendant says to include any payments that were pending as of the date of the 2005 Agreement.

In any event, the plain language of § 2.1 does not limit the scope of the release; it is not even a reservation of rights. Rather, it emphasizes what payments the parties do *not* have to make. With respect to payments under the 2000 Agreement, § 2.1 does not contain language overriding the release or allow plaintiff to sue defendant for disputes over what defendant should have paid plaintiff under the 2000 Agreement. This reading is consistent with the broad language in § 1 that releases defendant from "*any and all actions . . . for injury, loss or damage of any kind whatsoever* which CAST has had or now has against the ETC Releases arising out of or *in any way related* to the 2000 Agreement." Jones v. Jenkins,

11

88 Wis. 2d 712, 725, 277 N.W.2d 815, 820 (1979) (contract provisions should be harmonized when possible). Accordingly, I agree with defendant that plaintiff's claims are limited to those arising out of events that occurred after December 31, 2004.

### D. "Unknown Dongles"

The "unknown dongles" have been so named by plaintiff because they are not recorded in defendant's receiving database. Plaintiff's theory is that defendant allowed others to use these dongles without authorization from plaintiff and without paying plaintiff for their use. Neither party specifies the claims to which these dongles relate but presumably they are part of the copyright, breach of contract and conversion claims.

The parties seem to agree that the question for the purpose of summary judgment is whether plaintiff has adduced sufficient evidence to allow a reasonable jury to find that defendant (rather than someone else) is responsible for the unauthorized use of these dongles. I conclude that plaintiff has done this by adducing evidence that the dongles were upgraded or renewed after defendant had registered or received them. Plaintiff does not have direct evidence of defendant's misuse, but that is not required. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 508, n.17 (1957) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.")

Defendant says that plaintiff cannot prove that defendant is responsible because there

12

are other possible explanations. For example, two of plaintiff's former employees have the ability to upgrade and renew dongles. Although defendant is free to use this evidence to undermine plaintiff's claim at trial, defendant cannot use it to show that partial summary judgment is appropriate. Plaintiff's evidence need not show with 100% certainty that defendant is liable; plaintiff need only show that a jury, drawing all reasonable inferences in plaintiff's favor, could render a verdict for plaintiff. <u>Ricoh Co., Ltd. v. Quanta Computer, Inc.</u>, 579 F. Supp. 2d 1110, 1120 (W.D. Wis. 2007).

However, with respect to all but four of the dongles at issue, plaintiff has failed to adduce any evidence that they were misused after December 31, 2004. Accordingly, defendant's motion for partial summary judgment will be granted with respect to the "unknown dongles," with the exception of dongles with serial numbers 1595, 1578, 5679 and 7987.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendant Electronic Theatre Controls, Inc., dkt. #26, is GRANTED with respect to (1) plaintiff CAST Group of Companies, Inc.'s claims for misrepresentation; (2) plaintiff's claims arising out of events occurring before December 31, 2004; and (3) the dongles with the following serial numbers

as disclosed in defendant's proposed findings of fact: 8461, 8458, 8198, 8131, 6910, 5678, 5644, 5616, 5524, 5369, 5327, 5323, 4537, 4791, 4736, 4329, 4219, 4006, 3950, 3877, 1661, 1559, 4587, 4539, 4665, 4632, 4397, 4205, 5519, 4191, 4149, 2586, 1768, 764, 899 and 5153 .  Plaintiff's complaint is DISMISSED as to those claims.

2.  Defendant's motion for summary judgment is DENIED in all other respects.

Entered this 27th day of August, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

14